Walter DZIWANOSKI

v.

OCEAN CARRIERS CORPORATION, a body corporate, Defendant,

and

Ore Steamship Corporation, a body corporate, Defendant,

and

Calmar Steamship Corporation, a body corporate, Defendant and Third-Party Plaintiff,

v.

NACIREMA OPERATING COMPANY, Inc., Third-Party Defendant.

Civ. No. 12268.

United States District Court
D. Maryland.

Dec. 28, 1960.

John J. O'Connor, Jr., Baltimore, Md., for plaintiff.

Mathias J. DeVito and Piper & Marbury, Baltimore, Md., for Nacirema Operating Co., Inc., third-party defendant.

THOMSEN, Chief Judge.

Nacirema's petition and plaintiff's answer thereto raise the question whether plaintiff has the right to have his attorney present during a medical examination pursuant to Rule 35, Federal Rules of Civil Procedure, 28 U.S.C.A.[1]

1. Rule 35, entitled "Physical and Mental Examination of Persons", provides:

"(a) Order for Examination. In an action in which the mental or physical condition of a party is in controversy, the court in which the action is pending may order him to submit to a physical or mental examination by a physician. The order may be made only on motion for good cause shown and upon

Plaintiff, a longshoreman, is suing the owner and operator of the S. S. Valiant Hope, alleging unseaworthiness and negligence. The complaint alleges that he sustained "severe painful and permanent injuries to his head, neck, back, body, arms and legs, the muscles, tendons, ligaments, aponeuroses, membranes, articular cartilages, joint capsules, joint spaces, fasciae nerves, sheaths, cardiovascular system, and tissues thereof". The complaint then describes more specifically the injuries claimed. Defendants brought in Nacirema, plaintiff's employer, as a third-party defendant. Nacirema or its compensation carrier had furnished medical and surgical attention to plaintiff for some time after the accident; among the doctors so engaged were Dr. John E. Carroll, Jr., an orthopedist, and Dr. James G. Arnold, Jr., a neurosurgeon.

As this case approached trial Nacirema made arrangements for plaintiff to be reexamined by Drs. Carroll and Arnold. Plaintiff appeared at Dr. Carroll's office at the appointed time accompanied by John J. O'Connor, Jr., Esq., his attorney in this case. When the attorney started to take notes, four or five minutes after the examination began, Dr. Carroll objected to the attorney's presence during the physical examination, the attorney refused to leave, and Dr. Carroll telephoned Nacirema's attorney, to whom plaintiff's attorney stated that he would insist upon being present while plaintiff was being examined by Dr. Carroll or any other physician at Nacirema's request. Nacirema's attorney thereupon advised that the examination be discontinued, cancelled the appointment with Dr. Arnold, and filed a petition in this case for an order requiring plaintiff to submit to physical examinations by Dr. Carroll and Dr. Arnold without his attorney being present at such examinations. Dr. Carroll objects to the presence of the attorney on the grounds that it would hinder the examination and would make it more difficult, if not impossible, for him to obtain an accurate history from the plaintiff and valid reactions of the plaintiff to tests conducted by the doctor.

Plaintiff's answer denies that the presence of his attorney would hinder the examination and states that it was and is his desire that his attorney be present. Neither plaintiff nor his counsel objects to further examinations by Dr. Carroll or Dr. Arnold, provided his attorney is present, and they do not challenge the ability or integrity of either of the doctors.

The question presented by this motion has not been discussed by any federal court in any opinion cited or found. However, in a law review article, Barnet, Compulsory Medical Examinations under the Federal Rules, 41 Va.L.Rev. 1059, 1073–74 (1955), the author concluded:

notice to the party to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

"(b) Report of Findings.

"(1) If requested by the person examined, the party causing the examination to be made shall deliver to him a copy of a detailed written report of the examining physician setting out his findings and conclusions. After such request and delivery the party causing the examination to be made shall be entitled upon request to receive from the party examined a like report of any examination, previously or thereafter made, of the same mental or physical condition.

If the party examined refuses to deliver such report the court on motion and notice may make an order requiring delivery on such terms as are just, and if a physician fails or refuses to make such a report the court may exclude his testimony if offered at the trial.

"(2) By requesting and obtaining a report of the examination so ordered or by taking the deposition of the examiner, the party examined waives any privilege he may have in that action or any other involving the same controversy, regarding the testimony of every other person who has examined or may thereafter examine him in respect of the same mental or physical condition."

" * * * it is desirable that once an examination be ordered, the procedure should be divested, as far as possible, of any adversary character. The physician is an 'officer of the Court' performing a non-adversary duty. The best possible attitude for both the party and the examiner to adopt is one of co-operation in a joint search for the facts. The very presence of a lawyer for one side will inject a partisan note into what should be a wholly objective inquiry. The attorney has ample opportunity to challenge the use made of the information obtained by the examination when the findings are presented as evidence in Court."

The idea that the examining physician under Rule 35 is an officer of the court is also expressed in 4 Moore, Federal Practice, sec. 35.06, p. 2563. See also Pitcairn v. Perry, 8 Cir., 122 F.2d 881, 886; The Italia, E.D.N.Y., 27 F.Supp. 785, 786. Rule 35, which was held to be within the rule making power of the court in Sibbach v. Wilson & Co., Inc., 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479, supplanted such old cases as Union Pacific Ry. Co. v. Botsford, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734, and Camden & Suburban Ry. Co. v. Stetson, 177 U.S. 172, 20 S.Ct. 617, 44 L.Ed. 721. Those cases, as well as the dissent in Sibbach, primarily evinced a concern for the examined party's privacy, an interest which is not here asserted.

The law permitting a party to obtain physical examinations of adverse parties has developed over the years as the problems of personal injury litigation have developed and have become better understood. In the absence of a statute or a rule similar to Rule 35 it has been generally held that the attorney for the examined party may be present at such an examination. See cases collected in 64 A.L.R.2d 497, 501 (sec. 5). On the other hand, it has been held that where the examination is authorized by a statute or rule which provides some protective devices but does not provide for the presence of counsel, the result should be otherwise. In Bowing v. Delaware Rayon Co., 8 W.W.Harr. 206, 38 Del. 206, 190 A. 567, 569, where there was a statute similar to Rule 35, the Court said:

"The statute does not provide for the presence of counsel at examinations, and, we think, there are sufficient reasons why they should not be present. No useful purpose would be served, and examinations would be, perhaps, interfered with and unduly prolonged.

"The purpose of the statute is to lessen the danger of fraud by enabling the defendant to prepare himself properly for trial. It places a defendant on an equal footing, as nearly as may be with a plaintiff, so far as concerns the opportunity to discover the true nature and extent of injury suffered." 38 Del. at pages 208–209, 190 A. at page 568.

Compare Lawrence v. Samuels, 20 Misc. 15, 44 N.Y.S. 602; Kuyamjian v. Murrah, 5 Misc.2d 204, 157 N.Y.S.2d 627.

Chief Judge Emory H. Niles, of the Supreme Bench of Baltimore City, recently decided a similar question in an ordinary tort action, where the lawyers on both sides were the same as in the instant case. Trotta v. Shell Oil Co., et al., Daily Record, November 21, 1960. Judge Niles said:

" * * * The object of a medical examination is to obtain medical data and information as to the plaintiff's condition. For this purpose the lawyer has no competence, and would not be able to assist or to protect his client. The only validity in the plaintiff's position would seem to be that if the lawyer is present he would be able to advise his client not to answer questions from the doctor which might constitute admissions with respect to the facts on which legal rights are based.

"The practical and reasonable solution to the question seems to the Court to be to exclude from evidence any statements made by the plaintiff to the doctor relating to non-medical matters. Such an exclusion would constitute a protection to the plaintiff against any admission which might affect his rights, and would allow the physician to make the physical examination in such manner as he deems proper.

"The Court observes in passing that an application made by the plaintiff to have his own doctor, rather than his own lawyer, present when the defendant's doctor examines the plaintiff, would receive sympathetic consideration from the Court. The Court would go further and express the view that a joint examination of any party by doctors on opposite sides of the case, has been in the past, and in the future would probably be helpful.

"The Court will sign an order directing the examination to be made without the presence of counsel and providing that statements or utterances on non-medical matters shall not be admitted into evidence at the trial of that case."

Although I do not fully agree that an attorney has no ability to protect his client during an examination if the client needs protection, the decision of Judge Niles that a lawyer does not have the absolute right to be present whenever his client is examined by a doctor for the other side is sound, in line with the practice in this State and District.[2] The presence of the lawyer for the party to be examined is not ordinarily either necessary or proper; it should be permitted only on application to the court showing good reason therefor. If the attorney desires to be present in order to control the examination, that would invade the province of the physician; if he desires his observations to be the basis of cross-examination or possible contradiction of the doctor, he is making himself in effect a witness, with the difficulties which are likely to arise when an attorney asks questions on cross-examination based upon his own observations, and the possibility that he may wish to take the stand and thereby disqualify himself from completing the trial as the attorney. See Canon 19 of the Canons of Professional Ethics, adopted by the American Bar Association in 1908 and by the Maryland State Bar Association in 1948.

The plaintiff is not left unprotected. The suggestion, which I adopt, that he may have his own physician present if he wishes to do so and communicates that wish to the doctor or the attorney for the other side, is in line with Klein v. Yellow Cab Co., N.D.Ohio, 7 F.R.D. 169; Mitchell v. Pure Oil Co., E.D. N.Y., 20 F.Supp. 1021; Brown v. Hutzler Bros. Co., 152 Md. 39, 136 A. 30, 51 A.L.R. 177; 17 Am.Jur. (Discovery and Inspection, sec. 56) p. 62; 64 A.L.R.2d 498. If counsel is concerned about the adequacy of the examination, he may time the examination, ask his own client questions about it, cross-examine the doctor, and, of course, inspect the report which he is entitled to demand under Rule 35. Finally, if the court concludes that a particular doctor cannot be trusted to make a fair examination, it may refuse the requested order or designate another doctor in whom the court has confidence. These measures adequately safeguard the parties in the ordinary case; exceptional cases can be dealt with as they arise.

Counsel may prepare an order in accordance with this opinion directing that the examination by Dr. Carroll and Dr. Arnold be made without the presence of plaintiff's attorney, but with

---

2. It is not customary in this District for attorneys to be present when their clients are examined by doctors chosen by the other side, but it is occasionally done when there is no objection.

plaintiff's physician present, if desired, and providing that any statements made to Dr. Carroll or Dr. Arnold which are not germane to the physical examination may be objected to on that ground at the trial of the case, at which time an appropriate ruling can be made.

I am authorized by Judge Chesnut and Judge Watkins to say that they concur in this opinion.