Dorothy **BRANDENBERG,** Plaintiff,

v.

**EL AL ISRAEL AIRLINES and British Airways,** Defendants.

**No. 77 Civ. 66–CSH.**

United States District Court,
S. D. New York.

March 29, 1978.

Glaser & Blitz, New York City, for plaintiff.

Mendes & Mount, New York City, for defendant El Al Israel Airlines.

Condon & Forsyth, New York City, for defendant British Airways.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Co-defendant British Airways moves for an order pursuant to Rules 35(a) and 37(a), F.R.Civ.P., compelling plaintiff Dorothy Brandenberg to submit to a psychiatric examination, and to answer certain questions posed during her oral deposition before trial, to which she did not respond on her attorney's instructions. Plaintiff resists both aspects of the motion, in an affidavit of counsel which cites no authority. On the basis of the authorities cited by British Airways, and the Court's own research, I conclude that the defendant is entitled to both measures of relief.

### I.

Plaintiff commenced her action against El Al Israel Airlines and British Airways in New York Supreme Court. The action was removed to this Court on the basis of diversity of citizenship. Plaintiff alleges that in March of 1976, she purchased airline tickets from the defendants, and

that, during the air travel embraced by the tickets, was subjected to negligent, careless and reckless treatment, which caused "physical, emotional, mental stress, and mental and psychiatric injuries", damaging plaintiff in the amount of $900,000.

Defendants deposed plaintiff on November 10, 1977. It appears from the transcript of that deposition, which the Court has examined, that in March of 1976 Mrs. Brandenberg flew from New York to Israel to visit her married daughter. Although originally booked straight through from New York to Israel on El Al, on the day of the flight Mrs. Brandenberg was advised that she would fly from John F. Kennedy Airport, New York to Heathrow Airport, London, on British Airways, and then via El Al from London to Lod Airport, Tel Aviv. After staying with her daughter for two weeks, Mrs. Brandenberg returned by El Al from Tel Aviv to JFK, New York, the aircraft making one stop in France.

Mrs. Brandenberg's complaint, in essence is that in view of her age and physical condition (she suffered from diabetes), the airlines were obligated to treat her with particular care, and that they failed in that obligation, on the contrary, "abandoning" her in times of need. The most vivid testimony adduced during the deposition related to events at JFK after plaintiff disembarked from the El Al flight on the homeward voyage.

At the deposition, counsel for British Airways questioned plaintiff with respect to the JFK/Heathrow leg of the eastbound voyage, on the British Airways flight. Inquiries were directed toward pre-embarkation events at JFK, the course of the flight itself, and what transpired at Heathrow, where plaintiff was transferred from the British Airways to El Al flight. It is fair to say that the plaintiff, who was 73 in December of 1977, had some difficulty in remembering the sequence of events. It is also fair to say that, having studied her account of the events involving British Airways, the precise complaint or complaints which the plaintiff makes concerning her treatment at the hands of that defendant

are not clear. This position in respect of British Airways contrasts with that of the co-defendant, El Al; Mrs. Brandenberg's criticism of her treatment at the hands of El Al on the westbound flight is entirely clear.

In these circumstances, counsel for British Airways posed, or attempted to pose, the following questions to plaintiff at the end of the deposition:

"Q. Do you know of any factual basis to support the allegations in your complaints against British—"

"Q. Do you know of anything that British Airways did that was not proper treatment of you at Heathrow Airport in March of 1976?"

"Q. Mrs. Brandenberg, can you tell me in your own words what the basis of your claim against British Airways —"

"Q. Do you know of anything that British Airways did to you that was not in accordance with the way you thought you should be treated by them?"

"Q. What facts do you contend show that British Airways did not properly treat you?"

On direction of her attorney, the plaintiff declined to answer any of these questions. British Airways now moves for an order under Rule 37(a) compelling answers. Plaintiff resists on the ground that the questions call for legal conclusions of a lay witness.

While earlier cases under the discovery rules foreclosed inquiry into details of the negligence charged on the complaint, it is now well settled "that interrogatories are an appropriate means for obtaining a specification of the facts upon which a claim of negligence is founded." *Hartsfield v. Gulf Oil Corp.*, 29 F.R.D. 163 (E.D.Pa.1962). *Hartsfield* involved a complaint alleging negligence and unseaworthiness in vague and conclusory terms; the court overruled objections comparable to those in the case at bar, and directed answers to interrogatories which required plaintiff to: "State in detail the facts or information supporting

this allegation or upon which this allegation is based." While *Hartsfield* involved interrogatories under Rule 33, the opinion makes it clear that the same principles of discovery pertain to oral depositions. 129 F.R.D. at 164. The rationale expressed in *Hartsfield* is applicable to the case at bar:

"The objection that the interrogatories require the statement of conclusions or opinions is unjustified in the present circumstances. Opinions and conclusions are inherent in any specification of the factual basis of a claim of negligence. The allegation of negligence itself is the statement of a conclusion, and since negligence may be pleaded broadly, a statement of the facts upon which the conclusion is based can hardly be forbidden as the expression of conclusions. Nor is it necessarily improper to require conclusions or opinions. The Rules themselves do not preclude it, and to establish such a prohibitory principle would enthrone theoretical considerations of logical symmetry above the practical requirements of everyday litigation. Any denial of interrogatories which are calculated to lead to evidence or to narrow the issues would thwart the purpose of the Rules. 4 Moore, Federal Practice (2d ed.), § 33.17." *Id.* at 164–165.

See also *B–H Transportation Co. v. Great Atlantic and Pacific Tea Co.*, 44 F.R.D. 436, 438–439 (N.D.N.Y.1968), an opinion by then District Judge Timbers.

It is unnecessary to cite further authority. British Airways is understandably left in the dark, on the present deposition record, as to the factual basis perceived by plaintiff for the charge of negligence against it. British Airways is entitled to inquire on that score, and plaintiff is directed to respond to such questions, at a continuation of her deposition at a place and time to be mutually agreed or, failing such agreement, as directed by the Court.

## II.

British Airways has retained Edward Gendel, M.D., a psychiatrist, to examine plaintiff at his office in New York City.

It appears from Dr. Gendel's affidavit that he has been engaged in the practice of medicine since 1947; that he is a Diplomate of the American Board of Psychiatry and Neurology; that he is a member of the American Psychiatric Association, a fellow of the American Academy of Psychoanalysis, and serves on the staff of the Postgraduate Center for Mental Health; and that he has been a practicing psychiatrist for thirty years.

In view of the allegations of injury and damage in the complaint, a psychiatric examination of the plaintiff under Rule 35(a) is clearly appropriate. Plaintiff does not contend otherwise; nor is objection made to the professional qualifications of Dr. Gendel. But plaintiff insists that her attorney be present at the psychiatric examination, a condition which Dr. Gendel rejects as an unacceptable interference with the psychiatric examination process.

Plaintiff's contention is frivolous. It has been consistently held, in connection with physical examinations under Rule 35, that counsel for the party being examined are not entitled to be present. *Dziwanoski v. Ocean Carriers Corp.*, 26 F.R.D. 595 (D.Md. 1960); *Warrick v. Brode*, 46 F.R.D. 427 (D.Del.1969). These cases, involving physical examinations, hold that the party being examined may have his own physician present if he wishes. However, the presence of even the party's own physician at a psychiatric examination has been denied, *Swift v. Swift*, 64 F.R.D. 440, 443 (E.D.N.Y. 1974), undoubtedly in view of the particular nature of a psychiatric examination, which relies, as Dr. Gendel's affidavit points out, upon unimpeded, one-on-one communication between doctor and patient.

Plaintiff cites no authority to the contrary. Her attorneys are not entitled to attend the psychiatric examination by Dr. Gendel.

## III.

For the foregoing reasons, the motion of defendant British Airways is in all respects granted.

It is So Ordered.