**Svend LANGFELDT–HAALAND, Petitioner,**

**v.**

**SAUPE ENTERPRISES, INC., Respondent.**

**No. S–2387.**

Supreme Court of Alaska.

Feb. 17, 1989.

Joseph L. Paskvan, Hoppner & Paskvan, Fairbanks, for petitioner.

Susan M. West, Robertson, Monagle & Eastaugh, Anchorage, Howard Staley, Sta-ley, DeLisio, Cook & Sherry, Fairbanks, for respondent.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

OPINION

MATTHEWS, Chief Justice.

This petition raises the question whether an attorney for a plaintiff in a personal injury case is entitled to attend or tape record a Civil Rule 35[1] medical examination.

Svend Langfeldt–Haaland sued Saupe Enterprises to recover for personal injuries sustained in an automobile accident. Pursuant to Civil Rule 35, Saupe moved for an order requiring that Svend submit to a physical examination by a physician selected by Saupe. Svend did not object, but asserted rights to record the exam and to have his attorney present. The court ordered Svend to submit to the examination without benefit of counsel or tape recording. We granted Svend's petition for review.

Civil Rule 35(a) provides in part:

*Order for Examination.* When the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician.... The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

The person examined is entitled to receive a written report of the examination. Civil Rule 35(b).

We have never addressed the question whether a party in a civil action has the right to have his attorney present during an examination by a physician hired by his

---

1. Alaska R.Civ.P. 35.

opponent. Other courts have done so, with widely divergent results.

In California, a party compelled to submit to a physical examination is entitled to have an attorney present.[2] Moreover, either party is entitled to request the presence of a court reporter.[3] The fact that a court reporter is present does not preclude the attendance of plaintiff's attorney.[4] However, the party has no right to his attorney's presence during a psychiatric examination.[5]

Florida, New York, and Washington permit an attorney to attend both physical and psychiatric examinations as a matter of course.[6] In Montana, an attorney has the right to be present while a physician takes his client's medical history, but not during the physical examination.[7] In Oregon and Wisconsin, the burden is on the injured plaintiff to show good cause justifying the attorney's presence.[8] The federal rule, followed by several states,[9] is that the plaintiff's attorney may not attend an examination.[10]

The courts which do not permit attorney attendance reason that ethical problems may arise because the attorney may be called as a witness for his client.[11] Moreover, they wish to divest the examination of any adversary character.[12] The examinee is protected because he has access to the doctor's written report, and may depose the doctor and object to inadmissible evidence during trial.[13] Some courts also note that physicians may refuse to perform an examination in the presence of an attorney, that the attorney is likely to interfere, and that the patient's reactions may be skewed, rendering the examination useless.[14]

Those courts which permit an attorney to be present generally reason that the physician should be prevented from making inquiries beyond the legitimate scope of the exam, thus transforming the exam into a sort of deposition.[15] Moreover, the attorney's presence may aid in the eventual cross-examination of the physician.[16] The attorney need never be called as a witness for his client if the examination is tape recorded.[17] These courts refuse to presume that the attorney will interfere with the examination and recognize that the courts have the authority to deal with any

**2.** *Sharff v. Superior Court,* 44 Cal.2d 508, 282 P.2d 896, 897 (1955).

**3.** *Gonzi v. Superior Court,* 51 Cal.2d 586, 335 P.2d 97, 99 (1959).

**4.** *Munoz v. Superior Court,* 26 Cal.App.3d 643, 102 Cal.Rptr. 686, 687 (1972).

**5.** *Edwards v. Superior Court,* 16 Cal.3d 905, 130 Cal.Rptr. 14, 549 P.2d 846, 848–50 (1976).

**6.** *Bartell v. McCarrick,* 498 So.2d 1378, 1379 (Fla.App.1986); *Reardon v. Port Auth.,* 132 Misc. 2d 212, 503 N.Y.S.2d 233, 234–35 (1986); *Tietjen v. Department of Labor & Indus.,* 13 Wash.App. 86, 534 P.2d 151, 153–54 (1975).

**7.** *Mohr v. District Court,* 202 Mont. 423, 660 P.2d 88, 88 (1983).

**8.** *Pemberton v. Bennett,* 234 Or. 285, 381 P.2d 705, 706–07 (1963); *Whanger v. American Family Mut. Ins. Co.,* 58 Wis.2d 461, 207 N.W.2d 74, 79 (1973).

**9.** *E.g., Pedro v. Glenn,* 8 Ariz.App. 332, 446 P.2d 31, 33–34 (1968).

**10.** *McDaniel v. Toledo, P. & W. R.R.,* 97 F.R.D. 525, 526 (C.D.Ill.1983); *Dziwanoski v. Ocean Carriers Corp.,* 26 F.R.D. 595, 597–98 (D.Md. 1960).

**11.** *McDaniel,* 97 F.R.D. at 526; *see* Alaska Code of Professional Responsibility DR 5–102 (attorney shall withdraw if he ought to be called as a witness for his client).

**12.** *McDaniel,* 97 F.R.D. at 526; *Pemberton,* 381 P.2d at 706; *Whanger,* 207 N.W.2d at 79.

**13.** *Warrick v. Brode,* 46 F.R.D. 427, 428 (D.Del. 1969); *Dziwanoski,* 26 F.R.D. at 598; *Pedro,* 446 P.2d at 33; *Edwards,* 549 P.2d at 850 (psychiatric exam); *Mohr,* 660 P.2d at 89.

**14.** *Pedro,* 446 P.2d at 33 (psychiatric exam); *Edwards,* 549 P.2d at 849 (same); *Pemberton,* 381 P.2d at 706.

**15.** *Sharff,* 282 P.2d at 897; *Reardon,* 503 N.Y.S. 2d at 234–35; *Steele v. True Temper Corp.,* 174 N.E.2d 298, 301–02 (Ohio Common Pleas), *appeal dismissed,* 193 N.E.2d 196 (Ohio App.1961); *Tietjen,* 534 P.2d at 154.

**16.** *Reardon,* 503 N.Y.S.2d at 235; *Jakubowski v. Lengen,* 86 A.D.2d 398, 450 N.Y.S.2d 612, 613 (1982).

**17.** *Gonzi,* 335 P.2d at 99.

actual interference.[18]

■ In our view, those cases which allow the examinee's attorney to be present are the more persuasive. The Rule 35 examination is part of the litigation process, often a critical part. Parties are, in general, entitled to the protection and advice of counsel when they enter the litigation arena. An attorney's protection and advice may be needed in the context of a Rule 35 examination, and we see no good reason why it should not be available.

In *Houston v. State*, 602 P.2d 784, 792–96 (Alaska 1979), we held that a criminal defendant has the right to have his attorney present at a psychiatric examination conducted under a court order requested by the prosecution. This right is part of the right to counsel in criminal cases expressed in article I, section 11 of the Alaska Constitution.[19] *Id.* at 795.

Although we did not delineate the precise function of counsel at the examination, we expressed our belief that defense counsel's role would generally be passive in nature. *Id.* at 796 n. 23. We relied in part on the decision in *Lee v. County Court*,[20] wherein the New York Court of Appeals explained the passive function of counsel at a psychiatric examination:

> [T]he function of counsel is limited to that of an observer.... [T]he defense attorney may take notes and save [his]

comments or objections for the trial and cross-examination of the examining psychiatrist.

However, we also cited with approval two Oregon cases which anticipated more active participation by counsel, namely, advising the client not to answer potentially incriminating questions posed by the psychiatrist.[21]

■ *Houston* supports, by analogy, our conclusion that plaintiff's counsel in a civil case should have the right to attend a physical, or psychiatric, examination of his client in several respects. First, there is a constitutional right to counsel in civil cases arising from the due process clause.[22] We recognize that the right to counsel in civil cases is not co-extensive with the right to counsel in criminal prosecutions,[23] but in the area of compelled examinations we see no reason to draw a distinction. Second, counsel may observe shortcomings and improprieties in an examination which can be brought out during cross-examination at either a civil or criminal trial. Third, although observation may be the primary role of counsel in both criminal and civil cases, counsel may on occasion properly object to questions concerning privileged information. There are privileges which may be invaded in civil as well as in criminal cases. Thus the reasons for allowing counsel to be present in a criminal case

---

18. *Reardon,* 503 N.Y.S.2d at 235; *Jakubowski,* 450 N.Y.S.2d at 614; *Steele,* 174 N.E.2d at 302; *Tietjen,* 534 P.2d at 154.

19. Alaska Const. art. I, § 11 provides:
   In all criminal prosecutions, the accused ... is entitled to be informed of the nature and cause of the accusation; to be released on bail, except for capital offenses when the proof is evident or the presumption great; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, *and to have the assistance of counsel for his defense.*
   (Emphasis added).

20. 27 N.Y.2d 432, 318 N.Y.S.2d 705, 267 N.E.2d 452, 459, *cert. denied,* 404 U.S. 823, 92 S.Ct. 46, 30 L.Ed.2d 50 (1971), *quoted in Houston,* 602 P.2d at 794.

21. 602 P.2d at 793–94 & n. 19 (citing *State v. Corbin,* 15 Or.App. 536, 516 P.2d 1314 (1973)

and *Shepard v. Bowe,* 250 Or. 288, 442 P.2d 238 (1968)); *see also Jakubowski,* 450 N.Y.S.2d at 613–14.

22. Alaska Const. art. I, § 7 provides:
   No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.

23. Article I, section 11 applies only to "criminal prosecutions." *McCracken v. State,* 518 P.2d 85, 90 (Alaska 1974). Thus, an indigent person has no right to appointed counsel in most civil cases, although certain exceptions exist in the areas of termination of parental rights, *V.F. v. State,* 666 P.2d 42, 44–45 (Alaska 1983); child custody, *Flores v. Flores,* 598 P.2d 893, 895 (Alaska 1979); paternity suits, *Reynolds v. Kimmons,* 569 P.2d 799, 803 (Alaska 1977); and civil contempt proceedings, *Otton v. Zaborac,* 525 P.2d 537, 538 (Alaska 1974).

which we accepted in *Houston* also generally apply in civil cases.

We align Alaska with those authorities which allow plaintiff's counsel to attend and record, as a matter of course, court-ordered medical examinations in civil cases.[24] The trial courts retain authority to enter appropriate protective orders under Civil Rule 26(c). The question whether defense counsel should also be allowed to attend the examination was not taken on review, and we express no opinion on this issue.

The order of the superior court requiring petitioner to submit to an unrecorded medical examination without the presence of counsel is REVERSED.

MOORE, Justice, with whom COMPTON, Justice, joins, dissenting.

The court adopts a blanket rule that plaintiffs have a presumptive right to have their counsel attend medical examinations ordered pursuant to Alaska Rule of Civil Procedure 35. This ruling presents grave policy concerns as well as practical problems for litigants, their counsel and the medical profession. Furthermore, this ruling departs from both the terms of Rule 35 and Alaska case law.

This ruling is premised on the assumption that most physicians hired to conduct independent medical examinations are nothing more than "hired guns." The assumption that most physicians will exceed the legitimate scope of such exams unless checked by the presence of opposing counsel denigrates the professionalism and objectivity of the medical profession. While cases of abuse certainly may exist, I submit that these situations are more appropriately dealt with on a case-by-case basis by the use of protective or preclusion orders authorized under our rules of civil procedure.

A presumptive rule allowing counsel into medical exams interjects an adversarial, partisan atmosphere into what should otherwise be a wholly objective inquiry. Many reputable physicians will be loath to perform such medical examinations if they become dominated by opposing counsel.[1] This rule is yet another intrusion into an area which should be properly the province of the physician. Much conflict has arisen lately between the legal and medical professions. As one commentator has noted, the time has come for each profession to cooperate and respect the role of their counterpart. LeBang, *Professionalism and Interprofessional Cooperation Between Physicians and Attorneys*, 12 S.Ill. U.L.J. 507 (1988).

I firmly believe that this court should follow the general approach developed over the last thirty years by the federal courts in interpreting Federal Rule of Civil Procedure 35. Alaska Rule of Civil Procedure 35 and the Federal Rule are identically worded. This court has repeatedly found federal authorities to be persuasive when interpreting a similarly worded Alaska rule. *Drickersen v. Drickersen*, 546 P.2d 162, 167 n. 9 (Alaska 1976) (Alaska Rules 13(g) and 14(a)); *Fenner v. Bassett*, 412 P.2d 318, 321 (Alaska 1966) (Alaska Rule 12(d)). Federal courts have consistently held that a plaintiff is not entitled to have his or her attorney present at a Rule 35 examination.[2] As the federal court reasoned in *Dziwanoski v. Ocean Carriers Corporation*, 26 F.R.D. 595, 596–97 (1960):

> [I]t is desirable that once an examination be ordered, the procedure should be divested, as far as possible, of any adversary character. The physician is an 'officer of the Court' performing a non-adversarial duty. The best possible attitude

---

**24.** If the client does not wish his or her attorney to attend all or part of an examination, these wishes must of course govern.

**1.** Indeed in this case, the physician hired by Saupe Enterprises to examine Sevand refused to perform the first medical exam because "he thought that the tape recording of the exam was a 'foot in the door' tactic of counsel to intrude into and dominate medical examinations, and

that doctors should not consent to perform examinations under such conditions."

**2.** *McDaniel v. Toledo, P. & W. R.R.*, 97 F.R.D. 525, 526 (C.D.Ill.1983); *Brandenberg v. El Al Israel Airlines*, 79 F.R.D. 543, 546 (S.D.N.Y. 1978); *Warrick v. Brode*, 46 F.R.D. 427, 428 (D.Del.1969); *Dziwanoski v. Ocean Carriers Corp.*, 26 F.R.D. 595, 597–98 (D.Md.1960).

for both the party and the examiner is one of cooperation in a joint search for facts. The very presence of a lawyer for one side will inject a partisan role into what should be a wholly objective inquiry. The attorney has ample opportunity to challenge the use made of the information obtained by the examination when the findings are presented as evidence in Court.

Other courts have recognized that the presence of counsel at medical exams will skew the reactions of the patients, perhaps rendering the examination useless.[3] Counsel are likely to interfere with the exam, objecting to normal medical procedures and to questions posed by the examining physician.

The court ignores the practical problems posed by its ruling. Will counsel be able to interrupt exams to seek rulings by trial court judges on the propriety of doctors' questions or procedures? What about the exacerbated scheduling problems posed by counsel, clients and doctors? Finally, what about the right of opposing counsel to also attend these examinations or those of non-treating expert doctors hired by plaintiff for trial? The court dodges the critical question of defense counsel's role by stating that the issue was not raised in the trial court. By failing to consider the right of opposing counsel to also attend medical exams under Rule 35, the court provides a special tool to one side without considering its full impact on the carefully crafted balancing of interests set forth in the rule.

The court contends that the defendant is "represented" at the exam by her selected physician. However, most physicians are not legally trained and will not be in a position to respond to the legal objections raised by any counsel, nor should they be. If defendants are to be fairly treated, they should have the corresponding right to have their counsel attend these examinations. Or why should not defendants be given the reciprocal advantage of attending examinations by doctors hired by the plaintiff for purposes of preparing for trial? When viewed in its full implications, it becomes clear that this ruling threatens to turn medical exams into mini-depositions dominated by legal theatrics rather than medical fact finding. Counsel, who for the most part lack any special training in medical matters, will have unbridled discretion over the way a doctor examines the plaintiff. This, of course, assumes that doctors will even agree to do these exams under such onerous conditions.

The court's decision flies in the face of the language of Alaska Rule 35 itself and the protective scheme it provides. Rule 35 was adopted to provide defendants with equally unimpaired opportunity to evaluate the physical condition of the plaintiff. Plaintiff's counsel has already been afforded this unimpaired opportunity to evaluate his or her client's condition through examinations by the treating physician and any special experts hired in the course of litigation. The rationale of the rule is that fundamental fairness dictates that the defendant be given a similarly unimpaired opportunity to examine the plaintiff.[4]

The rule protects the interests of the plaintiff by requiring the production of the examining doctor's report. Moreover, under the federal rule, plaintiffs may elect to have their own physician present during the examination.[5] Rule 35(b) therefore provides a method for plaintiff's counsel to discover the extent, scope and results of the exam without intruding into the examination room and threatening the effectiveness of the exam.[6] Plaintiff's attorney

---

3. See *Pedro v. Glenn*, 8 Ariz.App. 332, 446 P.2d 31, 33 (1968) (psychiatric exam); *Edwards v. Superior Court*, 16 Cal.3d 905, 130 Cal.Rptr. 14, 549 P.2d 846, 849 (Cal.1976) (same); *Pemberton v. Bennett*, 234 Or. 285, 381 P.2d 705, 706 (1963).

4. See *Dziwanoski*, 26 F.R.D. at 597 (quoting *Bowing v. Delaware Rayon Co.*, 38 Del. 206, 190 A. 567, 569 (1937)).

5. *Brandenberg*, 79 F.R.D. at 546; *Warrick*, 46 F.R.D. at 428; *Dziwanoski*, 26 F.R.D. at 598.

6. The court states that even if improper evidence obtained at a medical examination is excluded at trial, the defendant will also benefit from having the improper information. These rare circumstances of abuse must be balanced against the threats posed by attorney interference on the rights of all defendants to an unhindered evaluation of plaintiff's condition. The

may depose the doctor and object to inadmissible evidence during trial.[7] By interjecting counsel into every exam, the court disrupts the rule's careful balancing of each party's interests. As the *Dziwanoski* court explained:

> In the absence of a ... rule similar to Rule 35 it has been generally held that the attorney for the examined party may be present at such an examination. See cases collected in 64 A.L.R.2d 497, 501 (sec. 5). *On the other hand, it has been held that where the examination is authorized by a ... rule which provides some protection devices but does not provide for the presence of counsel, the result should be otherwise.*

26 F.R.D. at 597 (emphasis added).[8]

The court's reasons for departing from this precedent are not persuasive. The majority relies on *Houston v. State*, 602 P.2d 784 (Alaska 1979), a criminal right to counsel case, to justify its decision to impose a general right to counsel for plaintiffs in all Rule 35 medical examinations. While the court claims to recognize the difference between the constitutional right to counsel in criminal cases [9] versus that of civil cases [10] under the Alaska Constitution, it fails to take this difference into account when considering the costs and benefits of their new rule. Far more protection is granted to defendants in a criminal action and consequently, the state is expected to undergo greater burdens in proving its case. The same is not true in civil cases. In fact, in personal injury civil cases, the need for, or even a request for, a psychiatric exam is rare. On the other hand, in criminal cases, such a need or request is the norm and is usually expected from defense counsel.

The *Houston* decision to allow counsel to attend psychiatric exams was based on a criminal defendant's constitutional right to confront and cross-examine witnesses. 602 P.2d at 795. The court concluded that the added benefit to the criminal defendant's counsel in cross-examining the psychiatrist justified allowing defendant's counsel to attend the psychiatric interview. *Id.* at 795–6.

This reasoning is simply not applicable to civil exams under Rule 35. Without the right of confrontation to justify the risks of disruption of the psychiatric interview, the benefits of more informed cross-examination and the rare instances where a counsel's presence may prevent an improper question do not outweigh the burdens imposed by counsel's attendance at an exam. In sum, the *Houston* experience, on which this court relies, does not justify such a broad rule in civil cases.

Finally, Svend contends that his right to counsel at a Rule 35 exam derives in part from his right to privacy. It seems likely that the ruling Svend seeks will ultimately intrude on a litigant's privacy more than the infrequent cases of improper medical exams the majority's new rule seeks to prevent. In most cases, the presence of counsel, tape recorders or video cameras in the doctor's examination room will likely compound rather than minimize the intrusion on the privacy of the examinee. With the adoption of this rule, counsel will feel compelled to attend all examinations. Moreover, plaintiffs will be subjected to greater potential embarrassment by having third parties in the examination room because plaintiffs will feel that the successful litigation of their claims somehow requires it.

---

latter situation is likely to occur far more frequently and thus outweighs the threat posed by use of excluded information by defendants.

**7.** *See Warrick,* 46 F.R.D. at 428; *Dziwanoski,* 26 F.R.D. at 598; *Pedro,* 446 P.2d at 33; *Edwards,* 549 P.2d at 850 (psychiatric exam); *Mohr v. District Court,* 202 Mont. 423, 660 P.2d 88, 89 (1983).

**8.** If this court wishes to amend Rule 35, it would be far wiser to allow the Civil Rules Committee to solicit the advice of practitioners, physicians and other parties so as to allow for a more thorough examination of any reasons for reform.

**9.** Alaska Constitution article I, § 11.

**10.** The due process protections of the Alaska Constitution are provided in article I, § 7.

I cannot subscribe to a broad rule that assumes physicians will act unprofessionally when conducting medical examinations under Rule 35. The infrequent cases of abuse are better handled through the use of special protective orders granted by the trial court on a case-by-case basis.

There are no allegations of improprieties, past or present, by the doctor involved in this case. Accordingly, I would affirm the trial court's order granting the exam with no requirement that it be tape recorded or that Svend's counsel be present.