David Michael TOMLIN, Plaintiff,

v.

Frank C. HOLECEK, William B. Behrens, Donald Dereschuk, et al., Defendants.

and

BE & K ENGINEERING COMPANY and BE & K Construction Company, Third–Party Plaintiffs,

v.

ASSET PROTECTION TEAM, INC., a subsidiary of Vance International, Inc., Third–Party Defendant.

Civ. No. 5–91–113.

United States District Court, D. Minnesota, Fifth Division.

Aug. 24, 1993.

Richard A. Williams, Jr., Hvass, Weisman & King, Minneapolis, MN, for plaintiff.

Robert H. Magie, III, Crassweller, Magie, Andresen, Haag & Paciotti and Carol M. Person, Clure, Eaton, Butler, Michelson, Ferguson & Person, Duluth, MN, for defendants.

ORDER

ERICKSON, United States Magistrate Judge.

I. *Introduction*

This matter came before the undersigned United States Magistrate Judge pursuant to

a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636(b)(1)(A), upon the Defendants' Motion for an Order that would compel the Plaintiff to undergo a psychological examination as contemplated by Rule 35(a), Federal Rules of Civil Procedure.

A Hearing on the Motion was held on August 19, 1993, at which time the Plaintiff appeared by Richard A. Williams, Jr., Esq., and the Defendants appeared by Robert H. Magie, III, Esq., and Carol M. Person, Esq.

For reasons which follow, we grant the Defendants' Motion.

## II. *Factual Background*

The Plaintiff was a security guard employed by Vance Security who, on September 9, 1989, was assigned to protect the premises of an encampment of non-unionized construction workers, which was located at a facility being built by BE & K Corporation for Boise Cascade Corporation in International Falls, Minnesota. Prior to that date, there had been both threats and incidents of violence which, apparently, were intended to convince the BE & K employees that the work they were performing was meant for unionized workers. On September 9, a large assemblage of union sympathizers, from as far away as the Upper Peninsula of Michigan, gathered at the encampment to protest the presence of the non-unionized workers.

During the course of the demonstration, mob action resulted and the Plaintiff was assaulted and battered. According to his Amended Complaint, the Plaintiff suffered "severe and permanent physical and emotional injuries." As a result of these injuries, the Plaintiff has been treated by, among others, Drs. Sharon Patterson and Joanna M. Newman, who are both consulting psychologists. In response to Interrogatories, the Plaintiff has asserted that each of these psychologists will testify, at the time of trial, concerning the psychological insults that the Plaintiff has suffered as a result of this incident. This testimony parallels, in part, the Plaintiff's deposition testimony that he has suffered a psychological injury which has found expression in, among other ways, incidents of sexual dysfunction.

By Order dated June 8, 1993, United States Magistrate Judge Patrick J. McNulty directed that a limited scope of discovery, to include the conduct of an independent medical examination of the Plaintiff, could continue until July 31, 1993. By letter dated July 14, 1993, counsel for the Defendants informed Plaintiff's counsel that an independent psychological examination of the Plaintiff had been scheduled before Patricia J. Aletky, Ph.D., of the Minneapolis Clinic of Neurology. In the same letter, the scope of Dr. Aletky's examination was explained as including a two-hour clinical interview, and the administration of three forms of psychological testing. A curriculum vitae for Dr. Aletky was also provided to the Plaintiff, together with an agreement that the Defendants would reimburse the Plaintiff for his transportation and lodging expenses.

By letter dated July 16, 1993, the Plaintiff objected to the independent examination, which had been scheduled for July 29, in the following terms:

I do have a concern about the adverse medical examination you have scheduled for Mr. Tomlin. It specifically focuses on a two-hour interview of our client without someone from this office being present. This would amount to a second deposition being taken of our client. Another concern is the areas your expert intends to explore during this two-hour interview.

In lieu of forcing you to file a motion for an adverse medical examination, we are willing to propose an alternative. If you are willing to provide us with a list of questions your expert intends to ask at the interview, and allow someone from this office to be present, or for the interview to be taped, we will not object to the interview. In addition, we would like to have a list of all documents and material provided to your expert prior to the interview.

The parties attempted to resolve their differences, but to no avail, and the scheduled examination was cancelled and this Motion was filed by the Defendants.

In support of their Motion, the Defendants have filed the Affidavit of Dr. Aletky which avers that "[a] proper psychiatric examination cannot be * * * performed in the pres-

ence of third persons, especially third persons associated with plaintiff's counsel's law office," and "[t]hat if the patient knows that statements are being recorded, he will be on the defensive, and such statements will be reserved and not completely objective." Dr. Aletky also observed that "many matters of a confidential nature must be inquired into, the patient's innermost feelings and emotions dealt with, and the presence of a third person will cause a patient, consciously or unconsciously, to guard, alter, or disguise his responses," and that "any diagnosis of the patient's condition or evaluation of the plaintiff's complaints will be of questionable validity where the examination is performed in the presence of third persons." In Dr. Aletky's opinion, if she is "to make an objective psychiatric examination of the patient, it is necessary that the examination not be hampered by [a] verbatim recording of statements made or by the presence of other distracting influences or persons." These averments have gone unrebutted.

### III. Discussion

Two issues are presented by the Defendants' Motion:

1. Have the Defendants demonstrated "good cause" for the conduct of a Rule 35 examination?

2. May Dr. Aletky's examination proceed in the absence of counsel for the Plaintiff, without a prior submission, to Plaintiff's counsel, of the questions that Dr. Aletky intends to pose to the Plaintiff, and without a verbatim transcript being kept of the two-hour interview that Dr. Aletky intends to conduct?

We address each of these issues in turn, and we answer both affirmatively.

1. *The Defendants Have Demonstrated "Good Cause" for the Plaintiff's Rule 35 Examination.*

 Our analysis begins with a recitation of the prerequisites of Rule 35(a) for the conduct of an independent medical examination:

When the mental or physical condition of a party * * * is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner * * *. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

As used in this provision, the term "mental" refers to "mental disorders and psychiatric aberrations." *Lee v. Gulf Fleet Marine Corp.,* 110 F.R.D. 307 (E.D.La.1986), overruled on other grounds by *Soudelier v. Tug Nan Services, Inc.,* 116 F.R.D. 429 (E.D.La. 1987). To put his mental condition in controversy, a plaintiff must assert a claim of mental or psychiatric injury. *Cody v. Marriott Corp.,* 103 F.R.D. 421, 422 (D.Mass.1984). In *Schlagenhauf v. Holder, Inc.,* 379 U.S. 104, 119, 85 S.Ct. 234, 243, 13 L.Ed.2d 152 (1964), the Supreme Court held that "a plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury."

Given the guidance of these holdings, we have no difficulty in concluding that the Defendants have shown good cause for the conduct of a psychological examination of the Plaintiff. In this, we do not anticipate disagreement for, during the course of the Hearing in this matter, the Plaintiff candidly advised that his objection to the Defendants' showing of "good cause" was directed at the mode and method of the procedure that the Defendants were intending to employ, and was not to suggest that the Plaintiff's claim of psychological damage should withstand the Defendants' legitimate inquiry.

Therefore, as a consequence of the Plaintiff's assertion that he has sustained a severe and permanent psychological injury, and in view of his stated intent to prove that claim through the elicitation of expert psychological testimony, we find that the Defendants have shown "good cause" for the examination of the Plaintiff by Dr. Aletky.

2. *May Dr. Aletky's Examination Proceed in the Absence of a Verbatim Preserva-*

*tion of the Content of Her Interview with the Plaintiff?*

█ Our analysis of this question is substantially narrowed by the absence of any contention that Dr. Aletky is unqualified to conduct the contemplated examination, either because of her professional qualifications or her professional integrity. Rather, the Plaintiff's objection to the examination by Dr. Aletky reduces itself to a fervent, yet well-intended, complaint that, during the course of her evaluation, Dr. Aletky will conduct a 2–hour interview which unnecessarily exposes him to the unfettered inquiry of an "agent" of the Defendants, whose sole function will be to disparage the value of his case.

Initially, the Plaintiff had urged the Court to permit Plaintiff's counsel, or some another representative of the Plaintiff, to monitor Dr. Aletky's interview so as to assure that her questioning did not veer into areas which all would concede as inappropriate.[1] As to this aspect of the Plaintiff's Motion, we observe, as did the Court in *Cline v. Firestone*, 118 F.R.D. 588, 589 (S.D.W.Va.1988), that the Courts "are split on the issue of whether a party is entitled to have his attorney present during a Rule 35 examination." In reviewing the decisions on this subject, we have considered, but have given less weight to the State Court decisions which have addressed this issue, not because of any inadequacy in their considered reasoning, but because their analyses have been driven by perceived local customs or the provisions of a State statute.[2] As to the Federal cases that have considered this issue, we note that they, too, are divided, but that the greater weight of authority favors the exclusion of the Plaintiff's attorney

from the conduct of a Rule 35 examination. See, *Wheat v. Biesecker*, 125 F.R.D. 479 (N.D.Ind.1989); *Cline v. Firestone*, supra; *McDaniel v. Toledo, Peoria and Western Railroad Co.*, 97 F.R.D. 525 (C.D.Ill.1983); *Brandenburg v. El Al Israel Airlines*, 79 F.R.D. 543 (S.D.N.Y.1978); *Warrick v. Brode*, 46 F.R.D. 427 (D.Del.1969); *Dziwanoski v. Ocean Carriers Corp.*, 26 F.R.D. 595 (D.Md.1960); but see, *Di Bari v. Incaica Cia Armadora*, 126 F.R.D. 12 (E.D.N.Y.1989); *Zabkowicz v. West Bend Co.*, 585 F.Supp. 635 (E.D.Wisc.1984). As our subsequent discussion will reveal, of these Federal decisions, we find the reasoning of the former cases more persuasive than the latter.

Apparently, in recognition of the prevailing trend in the Federal Courts, the Plaintiff made clear, at the Hearing in this matter, that a taperecording of Dr. Aletky's interview would adequately resolve any objection to her examination that they might otherwise have. While less intrusive than the physical presence of the Plaintiff's attorney or other third person, we find the prospect of a taperecording, under the circumstances of this case, to be consistent with the underlying purposes of a Rule 35 examination. The result we reach is justified on three principal grounds.

First, to require a recording of Dr. Aletky's interview would potentiate toward invalidating her evaluatory technique. In an affidavit filed with the Court, Dr. Aletky has expressed her opinion that the presence of a third person, physically or by taperecording, is inimical to the conduct of a valid psychiatric examination. Notably, Dr. Aletky's opinion was not controverted[3] by any other ex-

---

1. As another alternative, the Plaintiff suggests that the Defendants should be directed to submit to the Plaintiff's attorneys in advance of her examination, all of the questions that she intends of ask him. We find, and the Plaintiff has readily conceded, that such a proposal is unworkable.

2. A variety of State Court cases have been cited by both sides. Some of these decisions support the exclusion of the Plaintiff's attorney. See, e.g., *Durst v. Superior Court for Los Angeles County*, 222 Cal.App.2d 447, 35 Cal.Rptr. 143 (1963); *Wood v. Chicago, Milwaukee, St. Paul and Pacific Railway Co.*, 353 N.W.2d 195 (Minn.App.1984); *Kelley v. Smith & Oby Co.*, 129 N.E.2d 106 (Ohio 1954). Others support the Plaintiff's request that

his counsel be in attendance during the course of the examination. *Langfeldt–Haaland v. Saupe Enterprises, Inc.*, 768 P.2d 1144 (Alaska 1989); *Jakubowski v. Lengen*, 86 A.D.2d 398, 450 N.Y.S.2d 612 (1982); *Reardon v. Port Authority*, 132 Misc.2d 212, 503 N.Y.S.2d 233 (N.Y.Sup.Ct. 1986); *Rochen v. Huang*, 558 A.2d 1108 (Del.Super.1988). As noted, we are convinced that the better approach to the resolution of this issue is presented by the Federal cases.

3. Counsel for the Plaintiff has challenged the opinions of Dr. Aletky as being conclusory. Given its own judgmental quality, and without any factual verification, we find counsel's challenge unconvincing.

pert in these proceedings and, generally, her concerns are corroborated by those authorities which have considered the argument and which recognize that psychological examinations necessitate an unimpeded, one-on-one exchange between the doctor and the patient. *Cline v. Firestone,* supra at 589 (citing, *Durst v. Superior Court for Los Angeles County,* 222 Cal.App.2d 447, 452–53, 35 Cal.Rptr. 143 (1963)); *Brandenburg v. El Al Israel Airlines,* supra at 544; *Swift v. Swift,* 64 F.R.D. 440, 443 (E.D.N.Y.1974). Given the apparent sensitivity of the subject matter which may well be explored in this interview, the need for a private and personal interchange, between the Plaintiff and Dr. Aletky, would seem self-obvious. In our view, the presence of third parties would lend a degree of artificiality to the interview technique which would be inconsistent with applicable, professional standards.

Of course, we would not be powerless to act if Dr. Aletky, or any other Rule 35 examiner, were seeking to invoke an evaluatory technique which had been discredited by the psychological community, which was of questionable validity, or which unreasonably jeopardized the Plaintiff's well-being. Here we are confronted with no such showing. To the contrary, based on nothing more than suspicion, the Plaintiff would have the Court constrict Dr. Aletky's evaluatory techniques in a way which, on the basis of this record, could render her examination futile. We will not promote a useless act.

Secondly, we interpret Rule 35 as a forthright attempt to provide a "level playing field" between the parties in their respective efforts to appraise the Plaintiff's psychological state. *Looney v. National Railroad Passenger Corporation,* 142 F.R.D. 264, 265 (D.Mass.1992). The Plaintiff flatly rejects this interpretation, and describes the Rule 35 examination as a maligned, but Court-sanctioned means by which the Defendants can select a "hired gun" who can be expected to submit a conclusory report which fully absolves the Defendants from any responsibility for the Plaintiff's psychological impairment if, indeed, any impairment should be found. In the Plaintiff's view, allowing the Defendant's "paid consultant" to have the

unfettered opportunity to question him for two hours would distort the evaluatory tool provided by Rule 35 beyond any legitimate purpose.

We are not so categorical in our characterizations, and we do not accept the Plaintiff's assessment of the Rule 35 process any more than we would accept, without an equally critical review, the oft-repeated apprehensions of the defense Bar that health care professionals unnecessarily prolong a plaintiff's treatment for personal self-gain. Undoubtedly, these conflicting apprehensions find documentation, in one case or another, but our application of Rule 35 is governed by the Rule's clear intent and not by misapprehensions about its potential for misuse.

In the absence of Rule 35, the Defendants' challenge to the physical or mental condition of the Plaintiff could only be advanced through the questioning of his treating or consulting health care professionals. The promulgators of Rule 35 obviously concluded that, under these circumstances, the crucible of cross-examination was an insufficient test of the truth and, accordingly, independent examinations, which could be undertaken only upon the agreement of the parties or at the discretion of the Court, were prescribed. While not without inherent shortcomings, the approach adopted by Rule 35 is a considered attempt to fairly place the parties on a somewhat equal footing. We say "somewhat," because the Rule 35 examination is, necessarily, an approximation a truly consultative approach and intrinsic distinctions between the Rule 35 examination and the evaluatory techniques of a treating physician do exist. On the one hand, the Plaintiff may select as many health care professionals as he should desire in order to appraise his physical or mental state on as many occasions as should be deemed necessary, while the Defendants' selection of a consultant is limited, at least to some degree, by their need to obtain the Court's confirmance before the selection can be finalized and, usually, for a one-time appraisal. On the other hand, the consultant retained by the Plaintiff is professionally constrained by the physician/patient relationship, which governs the treatment he or she may prescribe, while the involvement of the

Defendants' expert is solely consultative, and is devoid of any direct responsibility for the Plaintiff's treatment or care. Nonetheless, both sets of health care professions are bound by the methodologies of their discipline and by the same formal or informal principles of professional integrity.

Given this mix of similarities and distinctions, we have no doubt but that, in a truly unfettered state, the procedures of Rule 35 could lend themselves to abuse by one party or the other. To the extent that the Plaintiff regards the 2–hour interview of Dr. Aletky as providing an unacceptable degree of license with which she may question him at will, that degree of latitude is no greater than the liberality extended to the Plaintiff's consultants, who are expected to testify in this matter on the same general subject matter as may be anticipated from Dr. Aletky. If, as the Plaintiff fears, Dr. Aletky should fail to comprehensively record the contents of her interview with the Plaintiff, she will have no greater opportunity to do so than that accorded to the Plaintiff's consultants. Ultimately, it is for the Court and the Jury to assure that the evaluatory framework of Rule 35 is not misused or abused.

In the first instance, any objections that the Plaintiff has to the propriety of an examination, which has been scheduled or has been taken by a Defendant, can be submitted to the Court for resolution. Even if that objection were unsuccessful in precluding the examination of the Plaintiff, or in preventing the results of that examination from being submitted to the Jury, the Plaintiff will be able to underscore, through cross-examination, the weaknesses in the Defendants' opinion testimony that should discredit its believability. Contrary to the Plaintiff's contention, that a purely conclusory report from Dr. Aletky will neuter the effectiveness of his cross-examination of her opinions, and that a taperecording of her interview would permit a more meaningful exploration of her views, we are more persuaded that a less than detailed evaluatory report from Dr. Aletky will substantially impair the convincing effect of her opinion testimony. In any event, the Plaintiff suffers no disadvantage by his inability to taperecord Dr. Aletky's interview that is not shared by the Defendants who, insofar as this record discloses, are without a recording or a transcript of the interviews of the Plaintiff that were conducted by his psychologists. Our disposition in this matter, we feel, preserves the equal footing of the parties to evaluate the Plaintiff's mental state and to present their evaluations to a Jury, with their inherent strengths or weaknesses.

Lastly, we expressly note that we are hesitant—absent a compelling reason—to condition a Rule 35 examination upon restrictions which will foster a greater degree of advocacy in the conduct of such examinations than is, already, unavoidably present.[4] Were we

4. Although the issue we address is procedural in its nature and is not, even in the presence of diversity jurisdiction, governed by State law, we find the Minnesota Court of Appeals' analysis in *Wood v. Chicago, Milwaukee, St. Paul and Pacific Railroad Company*, 353 N.W.2d 195 (Minn.App. 1984), particularly instructive. Having the benefit of amici briefs from the plaintiffs' and the defense Bar, the Court concluded that an independent medical examination of the plaintiff should be permitted to proceed without the presence of the plaintiff's attorney. In so concluding, the Court reasoned as follows:

This case brings before the court a long-smoldering issue between the plaintiff and defense bars of this state. Candor forces us to acknowledge that, in practice, defense counsel greatly favor certain physicians for adverse examinations. Plaintiffs have similarly identified their favorites. Thus, the adversary process seems to cast physicians in the role of advocates, a result neither intended by Rule 35, Minn.R.Civ.P., nor desired by those concerned with the ethics of the medical profession. Essentially, the petitioner suggests that we recognize this practice and cope with its partisan nature by routinely allowing the plaintiff's attorney to be present during the adverse examinations.

\* \* \* \* \* \*

The discovery rules are designed to be tools for the elicitation of truth. To require routinely that attorneys be present during adverse medical examinations is to thrust the adversary process itself into the physician's examining room. The most competent and honorable physicians in the community would predictably be the most sensitive to such adversarial intrusions. The more partisan physicians might feel challenged to outwit the attorney. Thus, we fear that petitioner's suggested remedy would only institutionalize the abuse, convert adverse medical examiners into advocates, and shift the forum of controversy from the courtroom to the physician's examination room.

to honor the Plaintiff's request, that his counsel be present during the interview or that a taperecording of the interview be preserved so as to assist in his attorney's questioning of Dr. Aletky, we would be endorsing, if not promoting, the infusion of the adversary process into the psychologist's examining room to an extent which is, in our considered judgment, inconsistent with the just, speedy and inexpensive resolution of civil disputes, and with the dictates of Rule 35.

NOW, THEREFORE, It is—

ORDERED:

That the Defendants' Motion for an Order [Docket No. 317], that compels the Plaintiff to undergo an independent psychological examination by Dr. Patricia J. Aletky,[5] without the restrictions that the Plaintiff has sought to impose, shall be, and hereby is, GRANTED.

*Id.* at 196–97.

We agree, and we are not persuaded that good cause exists to warrant the preservation of a record of Dr. Aletky's interview of the Plaintiff.

**5.** Ordinarily, in accordance with the terms of Rule 35, we would include a date, time and place for Dr. Aletky's examination in this Order.

Counsel for the Defendant has advised that Dr. Aletky can schedule the examination with dispatch. If the parties are unable to agree to appropriate preconditions for Dr. Aletky's examination, the matter will be resolved by this Court, upon the application of any party.