JOHNATHAN B. SPRINKLE

and ROGER GOLDEN,

Plaintiffs and Respondents,

vs.

JAMES BURTON, M.D.,

Defendant and Appellant.

No. 96-225.

Submitted on Briefs October 10, 1996.

Decided December 27, 1996.

280 Mont. 358.

Appeal from the District Court of Cascade County.

Eighth Judicial District.

Honorable Robert P. Goff, Judge.

Reversed and remanded.

JUSTICE TRIEWEILER dissenting, joined by JUSTICES HUNT and LEAPHART.

For Appellant: Randy J. Cox, Boone, Karlberg & Haddon, Missoula.

For Respondent: Erik B. Thueson, John A. Kutzman, Thueson & Lamb, Helena.

JUSTICE NELSON delivered the Opinion of the Court.

James Burton, M.D. (Dr. Burton) appeals from an April 4, 1996 order of the Eighth Judicial District Court, Cascade County, denying his motion for change of venue. We reverse and remand.

Background

The record before us on appeal discloses that Plaintiffs Johnathan B. Sprinkle and Roger Golden, former employees of Burlington Northern Railroad, (BN), sued the railroad in separate actions under the Federal Employers' Liability Act (FELA) in Great Falls, Cascade County, Montana.

Plaintiffs claimed damages for back injuries which they sustained in the course of their employment.

Pursuant to Rule 35, M.R.Civ.P., BN hired Dr. Burton as an expert witness to conduct

independent medical examinations of both Sprinkle and Golden. Those examinations were conducted in Missoula, Missoula County, Montana, the location of Dr. Burton's professional office and residence. Dr. Burton charged BN $125.00 per hour for his services in this regard.

During the course of the litigation, by agreement of counsel, Plaintiffs' counsel deposed Dr. Burton in Missoula, Montana. Dr. [280 Mont. 361] Burton charged Plaintiffs' counsel $500.00 per hour for his time spent in the taking of his depositions. Believing that they had been overcharged by Dr. Burton, both Sprinkle and Golden filed motions in their respective cases seeking adjustment of his charges. It is undisputed that Dr. Burton never came to Cascade County in connection with either suit; all of his activities in connection with these lawsuits took place in Missoula.

Plaintiffs' FELA actions were both settled before trial and, by stipulation and order, each case was dismissed with prejudice, Sprinkle's on May 17, 1995 and Golden's on January 2, 1996. Neither of Plaintiffs' motions for adjustment of Dr. Burton's charges were ruled upon by the trial court prior to the case being dismissed with prejudice.

Subsequently, on January 4, 1996, Plaintiffs, by their counsel, filed suit against Dr. Burton in Cascade County seeking a ruling from the District Court that the doctor's charges were unconscionable and unenforceable. Plaintiffs' suit in Cascade County was premised on the court having continuing jurisdiction over Dr. Burton as an officer of the court or, alternatively, that Dr. Burton's fees were not reasonable as required by Rule 26, M.R.Civ.P.

Dr. Burton moved to change venue from Cascade County to Missoula County, the county of his residence and the county where his depositions were taken. The District Court denied Dr. Burton's motion for change of venue. This appeal followed.

Discussion

The issue on appeal is whether the District Court erred in denying Dr. Burton's motion for change of venue on the facts of this case. We conclude that the court erred.

Whether a county is a proper place for trial is a question of law involving the application of the venue statutes to pleaded facts. State v. Pegasus Gold Corp. (1995), 270 Mont. 32, 35, 889 P.2d 1197, 1199 (citing Minervino v. University of Montana (1993), 258 Mont. 493, 497, 853 P.2d 1242, 1245). Accordingly, our review of a district court's grant or denial of a motion for change of venue is plenary; we simply determine whether the court's ruling was legally correct. Pegasus, 889 P.2d at 1199 (citing Carter v. Nye (1994), 266 Mont. 226, 228, 879 P.2d 729, 730). See, also Emery v. Federated Foods, Inc. (1993), 262 Mont. 83, 87, 863 P.2d 426, 429.

In denying Dr. Burton's motion for change of venue, the District Court ruled that under Rule 26(b)(4)(C), M.R.Civ.P., it was obligated [280 Mont. 362] to require the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions (b)(4)(A)(ii) and (b)(4)(B). Noting that the issue of Dr. Burton's fees had been raised in the underlying cases but not resolved prior to dismissal and citing our decision in Schweigert v.

Fowler (1990), 240 Mont. 424, 784 P.2d 405, the court concluded that, as it was the trial court in both cases, it implicitly had the duty to rule on issues of fees for expert witnesses, including Rule 35 examiners, for discovery which it ordered. On that basis the court determined that Cascade County was the proper county for the place for trial of Plaintiffs' suit against Dr. Burton.

While the designation of a county as a proper place for trial is not jurisdictional, Sec. 25-2-112, MCA, the trial court's ruling on Dr. Burton's motion for change of venue was to a great extent bound up with the notion that the court retained or had continuing jurisdiction of Plaintiffs' instant case because it had presided over the underlying lawsuits and because Plaintiffs' motions for adjustment of Dr. Burton's deposition charges were first raised in the underlying litigation and were then within the authority of the court to resolve under Rule 26(b)(4)(C), M.R.Civ.P. Accordingly, we address this aspect of the trial court's decision first.

Clearly, as Dr. Burton concedes, during the pendency of the underlying cases the District Court would have had jurisdiction under Rule 26(b)(4)(C) to resolve the issue raised by Plaintiffs' motions. Rule 26(b)(4)(C), M.R.Civ.P., provides:

Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under subdivisions (b)(4)(A)(ii) and (b)(4)(B) [pertaining to Rule 35 experts] of this rule;

and (ii) with respect to discovery obtained under subdivision (b)(4)(A)(ii) of this rule the court may require, and with respect to discovery obtained under subdivision (b)(4)(B) of this rule the court shall require the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

While Schweigert says nothing to the contrary, we conclude that case does not provide the authority for the trial court's decision in the instant case. In Schweigert, the issue of the payment of expert witness' fees was raised in a post-trial motion to alter or amend the judgment. The underlying litigation was still pending when the trial court denied the motion. In affirming the district court, we simply [280 Mont. 363] held that the rule does not require the court to order payment of expert witness deposition fees, unless the court had ordered this discovery, and even then the court may not order payment if manifest justice would result. Schweigert, 784 P.2d at 411-12.

Here, despite the District Court's statement to the contrary, the court did not order Dr. Burton's depositions to be taken. Rather, the depositions were taken by agreement of counsel. More importantly, however, the motions for adjustment of Dr. Burton's deposition charges were not ruled upon during the pendency of the underlying litigation, contrary to what occurred in

Schweigert. Rather, here, both cases were dismissed with prejudice leaving the motions concerning Dr. Burton's deposition charges unresolved.

We have held, albeit in a criminal case, that when a case is dismissed "with prejudice" the trial court thereafter loses jurisdiction of the underlying litigation, other than to correct clerical errors. State, ex rel. Torres v. District Court (1994), 265 Mont. 445, 453, 877 P.2d 1008, 1012-13. Our decision in Torres was premised in part on the rule of finality of dismissals with prejudice set out in Schuster v. Northern Co. (1953), 127 Mont. 39, 45, 257 P.2d 249, 252, a civil case. Accordingly, to the extent that it based its decision to deny Dr. Burton's motion for change of venue on the basis that, having had the jurisdiction to decide the Rule 26(b)(4)(C) issue in the underlying lawsuits prior to their dismissal with prejudice, that jurisdiction simply continued into the new, instant litigation or was retained following such dismissal, the District Court was in error. To the contrary, having dismissed the underlying lawsuits with prejudice, any authority which the trial court derived from its jurisdiction in such cases ended with their dismissal.

In so ruling we neither explicitly nor implicitly decide any other issue as to the effect of the trial court's dismissal with prejudice of the underlying litigation on the merits of Plaintiffs' instant lawsuit. The only issue properly before us on appeal and, consequently, the only issue which we are deciding is the venue question.

That brings us to the central issue. On the facts of this case, independent of the underlying litigation, was Cascade County a proper venue for Plaintiffs' present action against Dr. Burton?

It is axiomatic "that venue will be determined by the status of the parties and

JOHNATHAN B

pleadings at the time of the complaint or at the time the moving party appears in the action." ... Moreover, "[t]he averments of the complaint will be taken as true in considering the motion ...." [280 Mont. 364]

Pegasus, 889 P.2d at 119 (citations omitted). If an action is filed in a county which is not designated as a proper place of trial, a defendant may move for a change of venue. Sections 25-2-114 and 115, MCA.

As the starting point for our analysis of venue questions we look to Sec. 25-2-118, MCA, which provides, in pertinent part:

Unless otherwise specified in this part:

(1) except as provided in subsection (3) [not at issue here], the proper place of trial for all civil actions is the county in which the defendants or any of them may reside at the commencement of the action;

In this case it is not disputed that at the time Plaintiffs' instant complaint was filed and at the time Dr. Burton first appeared in this action, he resided in Missoula County. Accordingly, without more, Dr. Burton was entitled to have venue of Plaintiffs' suit transferred to Missoula County. Our analysis does not end there, however.

It is also black-letter law that when a suit is properly commenced in more than one county and the plaintiff files in one of the permissible counties, the defendant may not change the venue of the action to a different county, even if the county preferred by the defendant is also a proper place for trial. Section 25-2-115, MCA; Melroe v. Doyle (1989), 239 Mont. 524, 525, 781 P.2d 1134, 1135 (citing Petersen v. Tucker (1987) 228 Mont. 393, 396, 742 P.2d 483, 484-85). It follows,

then, that we must next address whether Cascade County is also a permissible county in which Plaintiffs could sue Dr. Burton.

On appeal, Plaintiffs maintain that Cascade County is a permissible county in which to sue Dr. Burton. First, Plaintiffs argue that because BN hired Dr. Burton to provide expert testimony in Cascade County, the Cascade County courts are the proper courts to rule on a challenge to the doctor's fees for that testimony under Rule 26(b)(4)(C). Noting that this case does not involve any issue of what Dr. Burton has charged or would charge BN for his testimony at trial, assuming that he would be called to testify, but rather involves only the issue of what Dr. Burton charged Plaintiffs for the taking of his deposition in Missoula, we do not disagree that the district court sitting on a pending lawsuit is the appropriate court to resolve issues arising under Rule 26(b)(4)(C). Had the trial court ruled on Plaintiffs' motions to adjust Dr. Burton's charges during the pendency of their suits, there would be no argument that it was not the proper court to do so. As mentioned above, Dr. Burton concedes that.

However, as is also pointed out above, the District Court did not rule on Plaintiffs' Rule 26(b)(4)(C) motions during the pendency [280 Mont. 365] of the underlying litigation, but, rather, left those motions unresolved at the time it dismissed the lawsuits with prejudice. Whatever power a trial court might have under this rule during the pendency of a lawsuit, we are not cited to any authority nor are we persuaded that Rule 26(b)(4)(C) is properly read to designate venue for an independent cause of action involving an issue of the propriety or amount of an expert witness' deposition charges in litigation that is no longer pending. Furthermore, we decline to read into the

rule any such a requirement. Section 1-2-101, MCA.

Next, Plaintiffs argue that venue is proper in Cascade County because Dr. Burton as a Rule 35 examining physician is an "officer of the court." In support of this argument Plaintiffs cite several federal cases which have stated in dicta that a physician conducting a Rule 35 examination is an "officer of the court." Because of this status as an officer of the court, Plaintiffs contend that Dr. Burton was subject to the court's power to control the conduct of "... its ministerial officers and of all other persons in any manner connected with a judicial proceeding before it in every other matter appertaining thereto," Sec. 3-1-111(5), MCA, and regardless of the pendency of any particular action, Sec. 3-1-113, MCA.

As Plaintiffs point out, various courts have, either equivocally or unequivocally, referred to Rule 35 examining physicians as "officers of the court." For example, in Salvatore v. American Cyanamid Co. (D.R.I. 1982), 94 F.R.D. 156, one of the cases relied upon by Plaintiffs, the court held that where the defendant had the plaintiff examined by a physician pursuant to Rule 35, Fed.R.Civ.P., but then decided not to call the physician as a witness, the court could require the examining physician, nonetheless, to provide plaintiff with a written report of his examination. In wrestling with the question of the court's authority under Rule 35, Fed.R.Civ.P., it stated, "[u]nlike plaintiff's own doctors, Dr. Schaumburg is, in some sense, `an `officer of the court' performing a non-adversary duty.' " Salvatore, 94 F.R.D. at 158. (Emphasis added.)

To the same effect is Warrick v. Brode (D.Del. 1969), 46 F.R.D. 427, cited as authority in Salvatore. In Warrick, the court held that plaintiff was not entitled to have her attorney present

during a Rule 35 examination, although she could have her own physician present. Again, the court stated, "[t]he examining doctor is, in effect, an `officer of the court' performing a non-adversary duty." Warrick, 46 F.R.D. at 428. (Emphasis added.) [280 Mont. 366]

Similarly, in Pitcairn v. Perry (8th Cir. 1941), 122 F.2d 881, the court, in dicta, stated, "[i]t has been held that a physician making an examination pursuant to an order of the court becomes an officer of the court and he is available to either party as a witness." Pitcairn, 122 F.2d at 886.

Likewise, in The Italia (E.D.N.Y. 1939), 27 F.Supp. 785, also relied upon by Plaintiffs, the court ruled that a defendant requesting a Rule 35 examination order had no absolute right to choose the physician to conduct the examination. The court stated that the choice of examiners, though generally best left to the defendant so as to allow the defendant to develop its evidence, was ultimately within the discretion of the court. Where plaintiff strenuously objected to the defendant's choice, the court ruled that the parties should either select an alternate physician or leave the task of choosing a physician to the court. Italia, 27 F.Supp. at 786-87. In that context the court quoted with approval an advisory comment to the Rule that "the examining physician ... becomes essentially an officer of the court ordering the examination." Italia, 27 F.Supp. at 786.

Finally, while neither party cited the case in their appellate briefs, the notion that a Rule 35 examining physician is an officer of the court has been previously referred to by this Court. In Mohr v. District Court of Fourth Jud. Dist. (1983), 202 Mont. 423, 660 P.2d 88, we held that while a party's attorney had the right to be present while the examining physician is taking the client's history, the attorney had no right to be present during the physical examination itself. Mohr, 660 P.2d at 89. In ruling that an attorney's presence adds nothing to the examination, we cited with

approval the court's statement in Dziwanoski v. Ocean Carriers Corporation (D.Md.1960), 26 F.R.D. 595, that a Rule 35 examining physician is an officer of the court. Mohr, 660 P.2d at 89.

As to the rule itself, Rule 35, M.R.Civ.P., provides a procedure by which a party can obtain a physical or mental examination of another party in connection with litigation where the other party's physical or mental condition is at issue. The rule contemplates that the examination may be obtained either by order of the court on showing of good cause and upon notice, Rule 35(a), or by agreement of the parties, Rule 35(b)(3). In this case, Dr. Burton was retained by BN to examine Plaintiffs with the agreement of counsel.

In this regard, we note that, while the cases appear to deem a Rule 35 examining physician to be an officer of the court, the rule, by its terms, does not confer any special or particular status on the exam- [280 Mont. 367] iner regardless of the manner in which the examiner comes to examine a party.

Notwithstanding, assuming for purposes of this opinion that a Rule 35 examining physician is an "officer of the court," we are not persuaded that Sec. 3-1-111(5), MCA, is applicable on the facts presented here. Under this statute, the court has the power to control its "ministerial officers" and "persons in any manner connected with a judicial proceeding before it."

As to the first provision of this statute, even if Dr. Burton is an "officer of the court" it does not follow that he is thereby a ministerial officer for purposes of Sec. 3-1-111(5), MCA. While the Montana code does not define the term "ministerial officer," Black's Law Dictionary 996 (6th ed. 1990), defines such a person as

[o]ne whose duties are purely ministerial, as distinguished from executive, legislative, or judicial functions, requiring obedience to the mandates of superiors and not involving the exercise of judgment or discretion.

Moreover, this Court has defined a ministerial act as one performed in obedience to a mandate of legal authority, without regard to the exercise of judgment, and we have indicated that ministerial officers are those called upon to perform ministerial acts. See, State v. District Court (1990), 246 Mont. 225, 229, 805 P.2d 1272, 1275.

Clearly, under these definitions, a Rule 35 examining physician is not a ministerial officer. While such a physician may be appointed by the court or agreed upon by the parties to conduct a physical or mental examination of a party, it cannot be argued that the doctor must obey the mandates of superiors or a legal mandate and not exercise judgment or discretion in the conduct of the examination.

As to that part of Sec. 3-1-111(5), MCA, which gives the court control over "persons in any manner connected with a judicial proceeding before it," as discussed earlier in this opinion, Plaintiffs' lawsuits having been dismissed with prejudice, Dr. Burton was no longer before the original trial court.

Accordingly, even assuming Dr. Burton was an "officer of the court" we conclude that Sec. 3-1-111(5), MCA, does not provide authority for the court's control over the matter of his deposition charges in this case. Moreover, we do not read any provision of Sec. 3-1-111(5), MCA, as establishing venue for an independent cause of action involving an issue that is not

pending before the court. Section 1-2-101, MCA.

Plaintiffs' also argue that if the venue statutes apply at all, Sec. 25-2-125, MCA, is the appropriate statute. That statute provides [280 Mont. 368] that the proper place for the trial of an action against a person specially appointed to execute his duties is the county where the cause or some part thereof arose. The short answer to this contention is that Dr. Burton was not appointed by the court; he conducted his examination by agreement of counsel. Accordingly, we conclude that on the facts of this case Sec. 25-2-125, MCA, does not make Cascade County a permissible place of trial for the instant action against Dr. Burton.

Finally, Dr. Burton argues that although Plaintiffs' complaint is not premised on a contract theory, Sec. 25-2-121, MCA, is nevertheless, applicable. He contends that there was an "oral contract" between himself and Plaintiffs' counsel that he appear in Missoula and answer deposition questions and that, in return, he would be compensated therefor. Accordingly, as the place of performance of the oral contract, Sec. 25-2-121(2)(b), MCA, dictated that venue was proper in Missoula County as the county where Dr. Burton's labor or services were performed under the oral contract. See, also Schutz Foss Architects v. Campbell (1990), 243 Mont. 194, 793 P.2d 821.

Thus, according to Dr. Burton, Sec. 25-2-121(2)(b), MCA, presents an alternative authority to Sec. 25-2-118(1), MCA, supporting his motion for change of venue.

In response to this argument, Plaintiffs maintain that there was no contract between them and Dr. Burton; that they did not retain him for any purpose; that, to the contrary, he was hired by BN to gather evidence and testify against them; and that as a consequence of his involvement in the underlying litigation, they were compelled to take his deposition in order to adequately prepare to

meet his testimony at trial. Plaintiffs' contend that, while they never expected to depose Dr. Burton for free, they were, nevertheless only compelled to pay a "reasonable" charge under Rule 26(b)(4)(C). Alternatively, Plaintiffs argue that even if there was a contract, since no place of performance was specified and since the principal activity under the contract was to take place in Cascade County when Dr. Burton testified, under Sec. 25-2-121(1)(b)(ii), MCA, venue was proper there.

We do not find it necessary to resolve this argument one way or the other. Accepting at face value Plaintiffs' contention that there was no contract between them and Dr. Burton, and having heretofore rejected Plaintiffs' arguments for venue in Cascade County on the basis of Rule 26(b)(4)(C), Sec. 3-1-111(5), MCA, and their "officer of the court" theory, Sec. 25-2-118(1), MCA, remains the governing venue statute. Cascade County was not a permissible place for the trial of Plaintiffs' suit against Dr. Burton, and he was, accordingly, entitled [280 Mont. 369] to have the case transferred to the county of his residence, Missoula County.

We hold that the District Court erred in denying Dr. Burton's motion for change of venue on the facts here. We reverse and remand this case to the District Court in Cascade County for entry of an order granting Dr. Burton's motion for change of venue.

CHIEF JUSTICE TURNAGE, JUSTICES GRAY and ERDMANN concur.

JUSTICE TRIEWEILER dissenting.

I dissent from the majority opinion.

The Burlington Northern Railroad Company contracted with Dr. James Burton to perform a

defense medical examination and testify regarding his observations in two actions pending before the District Court for the Eighth Judicial District in Cascade County. For that reason, pursuant to Rule 26, M.R.Civ.P., the plaintiffs in those actions had a right to discover Burton's opinions by taking testimony in the form of a deposition, which would also be filed and used in Cascade County District Court.

Burton's involvement in both the underlying action and this action arises from an agreement to provide services in Cascade County. In the first instance, his testimony on behalf of the Railroad would, presumably, have been presented in person. As a result, the opposing parties had a right to take testimony from him, by way of deposition, which would also be used in Cascade County. In both instances he agreed to perform his part of each contract by giving testimony in, or for use in, Cascade County.

I conclude, therefore, that there was, at least, an implied contract between the plaintiffs and Burton. Burton agreed to provide testimony by way of deposition. The plaintiffs agreed to pay him a reasonable fee, as is required by Rule 26(b)(4)(C), M.R.Civ.P., for his testimony.

Section 25-2-121, MCA, provides that:

(1) The proper place of trial for actions upon contracts is either:

(a) the county in which the defendants, or any of them, reside at the commencement of the action; or

(b) the county in which the contract was to be performed. The county in which the contract was to be performed is:

....

(ii) if no county is named in the contract as the place of performance, the county in which, by necessary implication from the terms [280 Mont. 370] of the contract, considering all of the obligations of all parties at the time of its execution, the principal activity was to take place.

In this case, all of Burton's services for which he submitted his bill were related to the presentation of evidence in a personal injury suit pending in district court in Cascade County. Whether his services involved a personal appearance or the presentation of testimony by deposition makes no difference. The location from which he uttered the words which constituted the testimony to be presented in Cascade County makes no difference.

Burton contracted to perform services. The place of his performance was ultimately Cascade County. Therefore, venue is proper in Cascade County, regardless of the plaintiffs' preferred theory for retaining it there.

For these reasons, I dissent from the majority opinion. I would affirm the District Court's order denying Burton's motion for change of venue.

JUSTICES HUNT and LEAPHART join in the foregoing dissenting opinion.