No. 00-302

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 46

PATRICIA CARLSON,

Appellant/Cross-Respondent,

v.

CITY OF BOZEMAN,

Respondent/Cross-Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable William Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert K. Baldwin, Goetz, Gallik, Baldwin & Dolan, Bozeman, Montana

For Respondent:

Patricia L. Day-Moore, Bozeman City Staff Attorney, Bozeman, Montana

Submitted on Briefs: January 11, 2001
Decided: March 20, 2001

Filed:

_____

Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Bozeman City Judge Patricia Carlson (Carlson) brought this action to void portions of Bozeman Municipal Ordinance No. 1490 (BMO) which prohibit outside employment by the municipal court judge, and place the municipal court clerk under the supervision of the city finance department. Carlson also sought an award of attorney fees. Both parties moved for summary judgment. The Eighteenth Judicial District Court, Gallatin County, declared the two contested provisions of the BMO invalid, but dismissed Carlson's request for fees. Carlson appeals from the dismissal of her attorney fees claim, and the City of Bozeman (City) cross-appeals from the orders declaring portions of the BMO invalid. We affirm in part and reverse in part and remand for further proceedings.

¶2 The parties raise three issues on appeal:

>    1. Did the District Court correctly declare invalid the portion of BMO § 2.06.050 prohibiting outside employment for a municipal judge?

>    2. Did the District Court correctly declare invalid the portion of BMO § 2.06.030 placing the clerk of the municipal court under the supervision of the department of finance?

>    3. Did the District Court correctly dismiss Carlson's claim for attorney fees?

## FACTUAL BACKGROUND

¶3 On April 19, 1999, the Bozeman City Commission adopted BMO which created a municipal court in the place of the pre-existing city court. At that time, Carlson was the Bozeman City Court Judge and the only candidate on the ballot for election as the new municipal court judge. She currently is the Bozeman Municipal Court Judge.

¶4 On July 15, 1999, Carlson brought this action against City seeking to void portions of

two sections of BMO: the portion of § 2.06.050 which prohibited the municipal court judge from obtaining outside employment; and the portion of § 2.06.030 which placed the clerk of the municipal court under the supervision and control of the City's finance director instead of the municeal court judge (Complaint, Count I). Carlson also sought injunctive relief against the enforcement of these portions of BMO (Count II), a writ of mandamus requiring the city to repeal these portions of BMO (Count III), and her attorney fees (Count IV).

¶5 Both parties filed a flurry of motions and briefs. On December 22, 1999, the District Court issued an order ruling on various motions. This order dismissed Carlson's claim for attorney fees, granted Carlson's motion for summary judgment on the validity of that portion of BMO § 2.06.050 prohibiting outside employment, and set a hearing on the validity of that portion of BMO § 2.06.030 placing the municipal court clerk under the control of the finance department. The District Court also explained that it was basing its ruling upon the parties' cross-motions for summary judgment and supporting briefs.

¶6 On January 6, 2000, the District Court held a hearing on the issue of control over the municipal court clerk. On March 8, 2000, the District Court issued an order granting Carlson's motion for summary judgment invalidating that portion of BMO § 2.06.030 placing the municipal court clerk under the control of the finance department. Carlson then filed a request for clarification regarding her claim for attorney fees. On March 23, 2000, the District Court issued an order clarifying that its December 22, 1999 order was intended to foreclose Carlson from recovering attorney fees on any issue in this case.

¶7 Carlson now appeals to this Court from the District Court's dismissal of her attorney fee claim. City cross-appeals from the District Court's order of summary judgment declaring both BMO provisions at issue invalid.

## STANDARD OF REVIEW

¶8 We must first determine the appropriate standard of review to apply to the three issues raised. Both Carlson and City agree that the issue of the validity of that portion of BMO § 2.06.050 prohibiting outside employment by a municipal judge was decided upon summary judgment. However, they disagree on how the District Court decided the other two issues. Carlson argues that the District Court dismissed her attorney fee claim based on City's Rule 12(b) motion. We disagree.

¶9 Although City originally moved to have Carlson's attorney fee claim dismissed with a Rule 12(b) motion, it later moved for summary judgment on all issues. In its order dismissing Carlson's attorney fee claim, the District Court explained,"The City filed a motion to dismiss (which was denied) and each party has filed motions for summary judgment as well as responses." From this, we conclude that the District Court decided Carlson's attorney fee claim on summary judgment.

¶10 Carlson also argues that the District Court decided the validity of that portion of BMO § 2.06.030 placing the municipal court clerk under the control of the finance department, on the merits after a trial. In a footnote to her statement of facts, Carlson maintains that because the District Court received testimony and exhibits during its hearing, the hearing had to be a trial, as it would be highly unusual to take evidence in a summary judgment hearing. We disagree. A district court has the discretion in a summary judgment hearing to allow oral testimony to establish whether genuine issues of material fact exist. *Cole v. Flathead County* (1989), 236 Mont. 412, 416, 771 P.2d 97, 99. Because the testimony was taken during a summary judgment hearing, we conclude that this issue was decided on summary judgment as well.

¶11 We review a district court's order of summary judgment *de novo*. *Oliver v. Stimson Lumber Co*., 1999 MT 328, ¶ 21, 297 Mont. 336, ¶ 21, 993 P.2d 11, ¶ 21. In our review, we apply the same evaluation as the district court does, based on Rule 56, M.R.Civ.P. *Oliver*, ¶ 21. Summary judgment is appropriate when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See* Rule 56(c), M.R.Civ. P. We will apply this standard of review to all three issues raised on appeal.

## ISSUE 1

¶12 **Did the District Court correctly declare invalid the portion of BMO § 2.06.050 prohibiting outside employment for a municipal judge?**

¶13 BMO § 2.06.050 provided in pertinent part that a municipal judge could not have any employment in addition to employment as a municipal judge. City contends that the language of § 3-6-101 *et seq*., MCA , and particularly § 3-6-202, MCA, expressly authorize it to enact legislation governing the qualifications of municipal court judges, as long as the ordinances do not violate Article VII, Section 9 of the Montana Constitution, which sets forth the qualifications for and restrictions upon district court judges and supreme court justices. City further argues that its ordinance prohibiting outside

employment for a municipal judge is consistent with the provisions of § 3-1-604, MCA, which precludes a municipal court judge from practicing law in her own municipal court.

¶14 Carlson counters that the District Court properly invalidated the portion of BMO § 2.06.050 prohibiting outside employment by a municipal judge, because it conflicted with §§ 3-1-601 and -604, MCA, which by implication permit a municipal court judge to practice law in any other court but her own. Carlson argues that City is bound not only to avoid express conflicts with the statutes of this state, but is also bound not to adopt an ordinance which would frustrate the purpose behind state law or policy. Carlson contends that because the legislature intended to allow municipal judges to hold other employment, the ordinance forbidding this is invalid.

¶15 When interpreting statutes, this Court's only function is to give effect to the intent of the legislature. *Albright v. State by and through State* (1997), 281 Mont. 196, 206, 933 P.2d 815, 821. The intention of the legislature in enacting all statutes must first be determined from the plain meaning of the words in the statute. *State v. Hubbard* (1982), 200 Mont. 106, 111, 649 P.2d 1331, 1333. The whole act must be read together and where possible, full effect will be given to all statutes involved. *Albright*, 281 Mont. at 206, 933 P.2d at 821. However, where the plain meaning of a statute is subject to more than one reasonable interpretation, we will examine the legislative history to discern intent. *Committee for an Effective Judiciary v. State* (1984), 209 Mont. 105, 114, 679 P.2d 1223, 1228.

¶16 We conclude that the portion of BMO § 2.06.050 prohibiting all outside employment by a municipal judge conflicts with § 3-1-604, MCA, when read in conjunction with § 3-1-601(1), MCA, and is therefore invalid. Section 3-1-604, MCA provides:

> No municipal court judge may practice law before his own municipal court or hold office in a political party during his term of office.

Section 3-1-601(1), MCA, provides in pertinent part:

> Except as provided in 3-1-604 . . . no justice or judge of a court of record or clerk of any court may practice law in any court of this state. . .

¶17 Municipal judges are expressly prohibited in § 3-1-604, MCA, from practicing law in their own municipal courts. They are specially excepted in § 3-1-601(1), MCA, however,

from the blanket prohibition preventing district court judges from practicing law in any court. City relied exclusively upon § 3-1-604, MCA, in its analysis, and failed to take § 3-1-601(1), MCA, into account. When these two statutes are read together, it appears that municipal judges should be free to practice law in any court **except** their own municipal court. However, City argues that, had the legislature intended to restrict its authority to prohibit outside employment for municipal court judges, it would have provided as much by amending § 3-6-202, MCA (setting forth the qualifications of and restrictions upon municipal court judges), to expressly allow such outside employment. Because the legislature did not do so, City argues, the only logical conclusion is that the legislature intended to leave to the cities the authority to decide whether to allow their respective municipal judges to have outside employment. To answer the question of what the legislature intended in this regard, we will look to the legislative history of §§ 3-1-604, and -601(1), MCA, set forth above.

¶18 The legislative history behind §§ 3-1-601 and -604, MCA, demonstrates that the legislature specially intended that municipal judges be allowed to practice law to supplement their incomes. The bill amending these statutes was titled "An Act to Allow a Municipal Court Judge . . . to Practice Law Before Any Court of this State Except the Municipal Court of that Judge." H.B. 415, 48th Legis. (Mont. 1983). This bill amended §§ 3-1-601 and 604, MCA, as follows:

> **3-1-601. Certain officers not to practice law or administer estates.** (1) No <u>Except as provided in 3-1-604, no</u> justice or judge of a court of record or clerk of any court may practice law in any court in this state. . . .

> **3-1-604. Restrictions on municipal court judges**. No municipal court judge may practice law <u>before his own municipal court</u> or hold office in a political party during his term of office.

(Additions underlined, deletions stricken through). Representative Daily, who sponsored House Bill 415, introduced his bill to "allow a municipal court judge and his law partners to practice law before any court of this state except the court of that municipal judge." *Hearing on* H.B. 415 *before Comm. on Judiciary*, 48th Legis. (1983). He further explained:

> Current statutes do not allow a district court or municipal court judge to practice law in any court. This amendment would simply allow a municipal court judge to practice in other courts.

*Hearing on H.B. 415 before Comm. on Judiciary, 48th Legis. (1983). Judge Geagan, who testified in support of the bill, told the House Judiciary Committee:*

> The municipal judge's salary is not a generous one, so this bill will permit those judges to add to their income.

*Hearing on H.B. 415 before Comm. on Judiciary, 48th Legis. (1983). Thus, it is clear that the legislature intended to allow municipal judges to practice law in all courts except their own municipal court.*

¶19 City also presents a constitutional argument. It maintains that since Article VII, Section 9 of the Montana Constitution prohibits the outside employment of district court judges, and § 3-6-202, MCA, expressly requires a municipal court judge to have the same qualifications as are required of district court judges under Article VII, Section 9, its ordinance prohibiting outside employment for a municipal court judge actually complies with the Montana Constitution, and should therefore be upheld. We disagree. This argument totally ignores §§ 3-1-601(1) and -604, MCA, and confuses qualifications with restrictions.

¶20 Qualifications are threshold criteria one must meet in order to be considered for a judicial position. Article VII, Section 9(1) of the Montana Constitution, addresses the qualifications of supreme court and district court judges, including citizenship, residency, and number of years in the practice of law. The paragraph ends by providing that "qualifications and methods of selection of judges of other courts shall be provided by law." The remaining subsections of Article 9, including the prohibition against the outside practice of law, are restrictions which apply specifically to supreme court and district court judges. Clearly, Section 9(1) gives the legislature the right to set additional qualifications for judges of courts other than the district and supreme courts. That is precisely what the legislature has done. Section 3-6-202, MCA, which sets specific qualifications for municipal court judges, does not restrict them from having outside employment or engaging in the practice of law, and can be read in harmony with § 3-1-601(1), MCA, § 3-1-604, MCA, and Article VII, Section 9 of the Montana Constitution.

¶21 We have held that an ordinance which conflicts with a statute is void. *State v. Police Court* (1922), 65 Mont. 94, 100, 210 P 1059, 1061. City is correct that it has implied authority to enact ordinances in certain situations; however, a city cannot enact ordinances

which are repugnant to established law. *Associated Students v. City of Missoula* (1993), 261 Mont. 231, 234, 862 P.2d 380, 382.

¶22 The established law here does permit the outside practice of law by municipal court judges. While § 3-1-604, MCA, does not affirmatively declare that municipal judges can practice law outside their own municipal courts, its intent when read in conjunction with § 3-1-601(1), MCA, and the legislative history of the two sections as amended, is clear. Because BMO § 2.06.050 forbids what §§ 3-1-601(1) and -604, MCA, implicitly authorize, it is in conflict with these statutes and is therefore invalid. The District Court is affirmed under this issue.

¶23 Carlson also argues that BMO § 2.06.050 violates her constitutional right to seek employment. Since we hold this city ordinance invalid for the reasons set forth above, we decline to address this issue.

## ISSUE 2

¶24 **Did the District Court correctly declare invalid the portion of BMO § 2.06.030 placing the clerk of the municipal court under the supervision of the department of finance?**

¶25 City argues it had implied authority to enact an ordinance placing the municipal court clerk under the supervision of the city department of finance. City argues that it falls upon the governing body to decide where its employees shall fall for supervision purposes, and that the District Court's order voiding BMO § 2.06.030 violates City's legislative authority and is a violation of the separation of powers.

¶26 Carlson counters that the municipal court clerk performs duties which are prescribed by statute and by the instructions of its court, and is a ministerial officer whom the municipal judge may and should control. Carlson argues that BMO § 2.06.030 is in conflict with § 3-1-111, MCA, which gives her court the authority to control the conduct of its ministerial officers. Carlson recites the testimony given by numerous city judges and clerks regarding the ministerial duties of municipal clerks, and maintains that the District Court had an ample record from which to conclude that the municipal clerk is in fact a ministerial position. Carlson also argues that placing the municipal clerk under the supervision of the executive branch would have the executive branch controlling judicial functions, in violation of the separation of powers' clause of the Montana Constitution.

¶27 A ministerial officer is one who performs ministerial acts. *Sprinkle v. Burton* (1996), 280 Mont. 358, 367, 935 P.2d 1094, 1099. A ministerial act is one performed in obedience to authority without the exercise of judgment. *Sprinkle,* 280 Mont. at 367, 935 P.2d at 1099. In determining whether an officer is ministerial, we look to whether the officer has the right to exercise free judgment or discretion without constraint by legal authority. *Sprinkle*, 280 Mont. at 367, 935 P.2d at 1099.

¶28 A municipal court clerk must follow statutory directives regarding the filing and storage of records. Section 3-6-302, MCA. These duties allow for no real discretion. The municipal clerk must also follow the municipal judge's orders regarding scheduling and the operation of the court. While some of these acts may call for the occasional exercise of independent judgment, this does not mean the clerk's position is other than ministerial. *State v. District Court* (1990), 246 Mont. 225, 229, 805 P.2d 1272, 1275. The municipal clerk can exercise independent judgment only within those areas of responsibility in which the municipal judge allows him or her to do so.

¶29 A municipal court is empowered by statute to ". . . control, in furtherance of justice, the conduct of its ministerial officers." Section 3-1-111(5), MCA. If the court were to be divested of this control, it would be powerless to regulate its own calendar, prioritize the time of its clerks to meet the needs of the court, or compel the clerks to obey its orders. In short, its power to conduct business would be impaired. Because BMO 2.06.030 would usurp the power of the municipal court to conduct its business, in violation of § 3-1-111, MCA, it is invalid. The District Court is affirmed on this issue.

¶30 Since we hold this city ordinance invalid on the grounds set forth above, we decline to address whether it is also an unconstitutional violation of separation of powers.

## ISSUE 3

¶31 **Did the District Court correctly dismiss Carlson's claim for attorney fees?**

¶32 Carlson argues that the District Court erred in dismissing her claim for attorney fees. However, we have held that the District Court disposed of this question on summary judgment, rather than by dismissal.

¶33 First, Carlson contends she is entitled to fees under the private attorney general doctrine. She claims this litigation vindicated important public policies grounded in the

constitution, including the right to vote for qualified candidates, and the separation of powers among the equal branches of government. Private enforcement was required, Carlson argues, because City adopted the invalid ordinance even after she explained its infirmities. Carlson claims that a substantial number of persons have benefitted from her defense of the electorate's right to vote for qualified candidates, and her support for the independence of the judicial branch. Second, Carlson argues she is entitled to fees and costs because City's defense of BMO has been frivolous and in bad faith.

¶34 City contends the District Court was correct in denying Carlson her attorney fees under both the private attorney general doctrine and the bad faith theory. City argues that this case does not even remotely further or protect an issue of great societal importance. It points to the District Court's finding that this action did not affect a large number of people as required for imposition of the doctrine, but rather affected only one individual, the municipal court judge. Further, City agrees with the District Court's conclusion that it did not act with bad faith or malice, but in fact had legitimate concerns which it was attempting to address when enacting the subject ordinance.

¶35 A review of the record establishes that City first sought to dispose of Carlson's claim for fees under a Rule 12 motion to dismiss. City later filed a motion for summary judgment on all counts. On October 27, 1999, the District Court held a hearing on Carlson's motion for partial summary judgment. At the hearing, the District Court made it clear that City's motion for summary judgment would not be heard at that time. The court then acknowledged on the record that there would need to be testimony on the attorney fee issue, and agreed with Carlson's counsel that a two-tiered analysis on the fee question would likely be appropriate, to determine if Carlson should receive fees, and if so, how much. Two days after this hearing, Carlson filed her brief in opposition to City's motion for summary judgment. In addressing the request for summary judgment on fees, she pointed out that the parties and the Court had already agreed during oral argument on other matters that disputed issues of fact concerning the fees rendered summary judgment on that point inappropriate.

¶36 On December 22, 1999, without ever holding a hearing on attorney fees, the District Court issued its order "dismissing" Carlson's claim for fees. (As previously noted, the court indicated in the order that City's motions to dismiss had previously been denied, and it was therefore proceeding to rule on the summary judgment motions). Subsequently, when Carlson sought clarification on the fee issue, the District Court entered another order clarifying that it intended to foreclose Carlson from recovering any attorney fees

whatsoever.

¶37 After reviewing the record, we conclude the District Court erred in granting summary judgment on Carlson's claim for attorney fees. Carlson clearly intended to preserve her right to present evidence on this issue, which the court earlier agreed would be appropriate. The court then summarily disposed of Carlson's claim without giving her the opportunity to present evidence on bad faith, the private attorney general doctrine, or the nature and extent of her fees. As the District Court granted summary judgment on Carlson's claim without giving her the benefit of the hearing that the parties and the court earlier contemplated, and in light of the fact that we uphold the District Court's invalidation of the two contested portions of BMO, the District Court is reversed under this issue and this matter is remanded to the District Court for further proceedings consistent with this opinion.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART